UNITED STATES DISTRICT CIRCUIT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION


ZACKARY RILEY, in his individual capacity, )
) **JURY TRIAL DEMANDED**
    and as representative of the estate of: )
)
ROSEMARY E. SCOTT, )
f/k/a ROSEMARY E. RILEY, )
                              Plaintiff, )
)
v. ) **Case No. 2:15-cv-04294**
)
HANNIBAL REGIONAL HOSPITAL, )
HANNIBAL REGIONAL HEALTHCARE SYSTEM, )
HANNIBAL CLINIC, )
BLESSING HOSPITAL, )
LANDMARK HOSPITAL, )
LANDMARK MANAGEMENT SERVICES )
    of FLORIDA, LLC, )
UNIVERSITY OF MISSOURI HOSPITAL, )
CURATORS OF THE UNIVERSITY OF MISSOURI, )
BARNES-JEWISH HOSPITAL, )
BJC HEALTHCARE, )
)
    and )
)
JOHN DOES 1 THROUGH 120, )
                    Defendants. )

## COMPLAINT

Plaintiff Zackary M. Riley, in his individual capacity, and as representative of the estate of

Rosemary E. Scott (f/k/a Rosemary E. Riley), through counsel, for his claims and causes of action

against Defendants Hannibal Regional Hospital, Hannibal Regional Hospital, Hannibal Clinic,

Blessing Hospital, Landmark Hospital, Landmark Management Services of Florida, LLC,

University of Missouri Hospital, Curators of the University of Missouri, Barnes-Jewish Hospital,

BJC HealthCare, and John Does 1 through 120, states:

1

## JURISDICTION AND VENUE

1.      The district courts have original jurisdiction of this civil action under 28 U.S.C. § 1332(a)(1):

    a.  Defendants Landmark Hospital, University of Missouri Hospital, Curators of the University of Missouri, Hannibal Regional Hospital, Hannibal Regional Healthcare System, Hannibal Clinic, Barnes-Jewish Hospital, and BJC HealthCare are citizens of the State of Missouri;

    b.  Plaintiff Zackary M. Riley is a citizen of the State of Ohio;

    c.  Defendant Blessing Hospital is a citizen of the State of Illinois;

    d.  Defendant Landmark Management Services of Florida, LLC, is a citizen of the States of Florida and Missouri;

    e.  Upon information and belief, John Does 1 through 120 are citizens, variously, of either Missouri or Illinois; and

    f.  The amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

2.      Venue is proper in the Central Division of the Western District of Missouri under 28 U.S.C. § 1391 and Local Rule 3.1(b)2:

    a.  A substantial part of the events or omissions giving rise to the claim occurred in the Western District of Missouri, including the negligent medical treatment of Plaintiff's decedent at Landmark Hospital in Columbia, Missouri, and at the University of Missouri Hospital in Columbia, Missouri; and

    b.  Defendants Landmark Hospital, University of Missouri Hospital, and Curators of the University of Missouri reside in the Central Division.

2

## PARTIES

### Plaintiff

3.      Plaintiff Zackary M. Riley ("Riley") is an individual over the age of twenty-one residing at 480 Carlotta Drive, Youngstown, Ohio 44504. At all times relevant to this Complaint, Riley has been attorney-in-fact for decedent Rosemary E. Scott, f/k/a Rosemary E. Riley, under a durable power of attorney.

4.      Riley is the natural child of decedent Rosemary E. Scott, f/k/a Rosemary E. Riley.

### Plaintiff's Decedent

5.      Plaintiff's decedent, Rosemary E. Scott, f/k/a Rosemary E. Riley ("Rosemary"), lived in Boone County, Missouri, but died in Select Specialty Hospital, at 667 Eastland Ave SE, Warren, Ohio.

6.      Rosemary was survived by her two natural children, Plaintiff Zackary M. Riley and Billy Riley.

### Defendants

7.      Hannibal Regional Hospital is a sole proprietorship, limited partnership, or other business entity located in Marion County, Missouri, at 6500 Hospital Drive, Hannibal, MO 63401.

8.      Hannibal Regional Healthcare System is a sole proprietorship, limited partnership, or other business entity located in Marion County, Missouri, at 6500 Hospital Drive, Hannibal, MO 63401.

9.      Hannibal Regional Hospital is a subsidiary or affiliate of Hannibal Regional Healthcare System.

10.      Hannibal Regional Hospital and Hannibal Regional Healthcare System are corporate successors to liabilities incurred by their predecessor entities, including St. Elizabeth's

Hospital and Levering Hospital.

11.     For purposes of this Complaint, references to "Hannibal Hospital" include reference to Hannibal Regional Hospital, Hannibal Regional Healthcare System, and the predecessor entities of both, including St. Elizabeth's Hospital and Levering Hospital, and all allegations against "Hannibal Hospital" are joint and several allegations against all of those same entities.

12.     Hannibal Clinic is a sole proprietorship, limited partnership, or other business entity located in Marion County, Missouri, at 100 Medical Drive, Hannibal, MO 63401.

13.     Hannibal Clinic is the corporate successor to liabilities incurred by all of its predecessor entities.

14.     For purposes of this Complaint, allegations against Hannibal Clinic include allegations against Hannibal Clinic as successor to the liabilities of its predecessors.

15.     Blessing Hospital ("Blessing") is a sole proprietorship, limited partnership, or other business entity located in Adams County, Illinois, at 1005 Broadway St, Quincy, IL 62301.

16.     Blessing is the corporate successor to liabilities incurred by all of its predecessor entities.

17.     For purposes of this Complaint, allegations against Blessing include allegations against Blessing as successor to the liabilities of its predecessors.

18.     Barnes-Jewish Hospital ("Barnes") is a sole proprietorship, limited partnership, or other business entity located in St. Louis City, at 510 S Kingshighway Blvd, St. Louis, MO 63110. Barnes is a subsidiary or affiliate of Defendant BJC HealthCare.

19.     BJC HealthCare ("BJC") is a sole proprietorship, limited partnership, or other business entity located in St. Louis City, at 4901 Forest Park Avenue, St. Louis, MO 63108. BJC

owns or is affiliated with Barnes.

20.     The University Hospital ("MU Hospital"), at the University of Missouri, is a sole proprietorship, limited partnership, or other business entity located in Boone County, Missouri, at 1 Hospital Drive, Columbia, MO 65201.

21.     MU Hospital is affiliated with the University of Missouri Health Care System, which in turn is affiliated with the University of Missouri, which is governed by the Curators of the University of Missouri.

22.     The Curators of the University of Missouri ("Curators") is the governing body of the University of Missouri, and an entity capable of suing and being sued. The University of Missouri maintains and operates a campus in Boone County, Missouri, and the Curators' mailing address is 316 University Hall, Columbia, MO 65211.

23.     Landmark Hospital ("Landmark") is a sole proprietorship, limited partnership, or other business entity located in Boone County, Missouri, at 604 Old 63 N, Columbia, MO 65201. Landmark is affiliated with Landmark Management Services and with Landmark Holdings of Missouri, LLC.

24.     Landmark Management Services of Florida, LLC ("Landmark Management") is a limited liability company organized under the laws of the State of Florida, and the surviving entity of a merger between Landmark Management Services of Florida, LLC, and the Missouri limited liability company Landmark Management Services, LLC. Landmark Management maintains an office at 3255 Independence St., Cape Girardeau, MO 63701.

25.     John Does 1 through 20 are the individuals, as yet unidentified, who provided medical care to Rosemary while employed or contracted by Hannibal Hospital, or who otherwise acted as agents of Hannibal Hospital as relevant to any factual allegation of this Complaint.

5

26.     John Does 21 through 40 are the individuals, as yet unidentified, who provided medical care to Rosemary while employed or contracted by Hannibal Clinic, or who otherwise acted as agents of Hannibal Clinic as relevant to any factual allegation of this Complaint.

27.     John Does 41 through 60 are the individuals, as yet unidentified, who provided medical care to Rosemary while employed or contracted by Blessing, or who otherwise acted as agents of Blessing as relevant to any factual allegation of this Complaint.

28.     John Does 61 through 80 are the individuals, as yet unidentified, who provided medical care to Rosemary while employed or contracted by Landmark, Landmark Management, or Landmark Holdings of Missouri, LLC, or who otherwise acted as agents of any of those entities as relevant to any factual allegation of this Complaint.

29.      John Does 81 through 100 are the individuals, as yet unidentified, who provided medical care to Rosemary while employed or contracted by MU Hospital or Curators, or who otherwise acted as agents of MU Hospital or Curators as relevant to any factual allegation of this Complaint.

30.     John Does 101 through 120 are the individuals, as yet unidentified, who provided medical care to Rosemary while employed or contracted by Barnes or BJC, or who otherwise acted as agents of Barnes or BJC as relevant to any factual allegation of this Complaint.

**AGENCY**

31.     At all relevant times, Hannibal Hospital acted by and through its actual and ostensible employees and agents, including John Does 1 through 20.

32.     At all relevant times, Hannibal Clinic acted by and through its actual and ostensible employees and agents, including John Does 21 through 40.

33.     At all relevant times, Blessing acted by and through its actual and ostensible

employees and agents, including John Does 41 through 60.

34. At all relevant times, Barnes and BJC acted by and through their actual and ostensible employees and agents, including John Does 61 through 80.

35. At all relevant times, MU Hospital and Curators acted by and through their actual and ostensible employees and agents, including John Does 81 through 100.

36. At all relevant times, Landmark and Landmark Management acted by and through their actual and ostensible employees and agents, including John Does 101 through 120.

## GENERAL ALLEGATIONS

### *Negligent Surgery Left Sponges in Rosemary's Abdomen*

37. In the mid-to-late 1980s, Rosemary underwent one or more surgeries while under the care of one or more of Hannibal Hospital, Hannibal Clinic, or Blessing.

38. For the rest of her life, Rosemary suffered episodes of physical discomfort, physical pain, and gastrointestinal dysfunction, centered on her abdomen and the area of her back aligned with her abdomen.

39. As revealed in a postmortem examination, surgical sponges had been left in Rosemary's abdomen.

40. The examination further revealed that the presence of the sponges led to Rosemary's death: a bacterial infection had grown on the sponges, and this infection had spread to Rosemary's internal organs, ultimately causing the internal bleeding that killed her.

41. Upon information and belief, the sponges must have been left in Rosemary's body during either a hysterectomy or an operation on her stomach.

42. Both operations took place in the 1980s while Rosemary was under the care of one or more of Hannibal Hospital, Hannibal Clinic, or Blessing.

7

43.     Upon information and belief, no other facilities performed any operation on Rosemary that could have left the sponges in her abdomen.

44.     Upon information and belief, no one but Hannibal Hospital, Hannibal Clinic, or Blessing could have left the sponges inside Rosemary's abdomen.

### *Rosemary's Deterioration and Death*

45.     Beginning in August 2013, Rosemary received chemotherapy at MU Hospital for small-cell lung cancer, to which she responded well.

46.     As a result of her good response to the chemotherapy, MU Hospital advised Rosemary that she had a five-year life expectancy with continued treatment.

47.     On or about October 1, 2013, Rosemary was transferred to Landmark to complete her recovery from her first round of treatment.

48.     Within a few days at Landmark, Rosemary's condition began to deteriorate.

49.     Plaintiff urged Landmark physicians and staff to investigate the reason for his mother's decline, but Landmark never discovered the sponges.

50.     On or about October 24, 2013, Plaintiff confronted Landmark physician Dr. Sunna, relating Rosemary's symptoms in detail, and demanded that Dr. Sunna himself examine Rosemary.

51.     Upon doing so, Dr. Sunna stated that he suspected a blood infection and ordered a blood draw.

52.     Tests on the blood draw showed that Rosemary had acquired three blood infections during her hospital stay.

53.     High-level antibiotics were intravenously administered to Rosemary, but two days later, on or about October 26, 2013, she coded and was transferred back to MU Hospital.

54.     MU Hospital diagnosed Rosemary with a "walled off" ruptured abdominal aorta.

8

55.    MU Hospital refused to operate on Rosemary or give her other aggressive medical treatment to save her life.

56.    MU Hospital physician Dr. Nichols refused to take such measures for Rosemary "because of her age" and told Plaintiff, "You have to ask yourself: what are you saving here, anyway?"

57.    MU Hospital never discovered or addressed the sponges in Rosemary's abdomen.

58.    With MU Hospital refusing to give Rosemary life-saving treatment, on or about November 4, 2013, Plaintiff took Rosemary to Barnes.

59.    Despite Plaintiff's many pleas, Barnes also refused to operate or give her life-saving treatment.

60.    During Rosemary's stay at Barnes, Plaintiff overheard Barnes medical staff, including, upon information and belief, one or more of John Does 101 through 120, discussing Barnes's refusal to operate.

61.    In that overheard conversation, the staff emphasized that Rosemary had health coverage for only 30 more days of hospital stay, while a procedure to save her life would result in a 60-day hospital stay.

62.    Plaintiff inferred from that conversation that the unprofitability of saving Rosemary's life was a major factor in Barnes's refusal to provide the necessary treatment.

63.    Meanwhile, Rosemary's condition continued to deteriorate.

64.    Plaintiff pleaded and argued with Barnes, citing the Emergency Medical Treatment and Active Labor Act (EMTALA) and insisting that Barnes must act to save Rosemary, but Barnes continued refusing to perform the treatment Plaintiff requested.

65.    Rather than risk giving Rosemary 30 more days of care than Barnes believed would

be covered, Barnes flew Rosemary to Select Specialty Hospital, in Warren, Ohio, at Barnes's expense.

66.     Plaintiff wanted Barnes to operate, not to move Rosemary, but he authorized the move in the hope that an operation might be available elsewhere.

67.     Barnes never discovered or addressed the sponges in Rosemary's abdomen.

68.     By the time Rosemary reached Select Specialty Hospital, it was too late for effective treatment.

69.     Rosemary died in Select Specialty Hospital on December 19, 2013.

70.     Dr. Stephen Godfrey, the pathologist who examined Rosemary after her death, told Plaintiff that had Landmark, MU Hospital, or Barnes operated to remove the sponges, Rosemary would have lived.

## COUNT I

### WRONGFUL DEATH – MEDICAL NEGLIGENCE

### (Hannibal Hospital, Hannibal Clinic, Blessing, John Does 1 through 60)

71.     Plaintiff incorporates paragraphs 1 through 70 as if fully set forth herein.

72.     For purposes of this Count, "Defendants" refers jointly and severally to Hannibal Hospital, Hannibal Clinic, Blessing, and John Does 1 through 60.

73.     Defendants had a duty to possess and use that degree of skill and learning ordinarily used under similar circumstances by members of their profession in the care and treatment of Rosemary.

74.     Defendants breached their duty of care by recklessly, carelessly, and negligently allowing surgical sponges to remain inside Rosemary's abdomen, and by failing to detect or address the presence of the sponges they left inside Rosemary.

75.     As a direct and proximate result of Defendants' reckless, careless and negligent acts, Rosemary sustained death and other damages in excess of $ 75,000 under § 537.080 of the Revised Statutes of Missouri.

76.     As a direct and proximate result of Defendants' reckless, careless and negligent acts, Plaintiff Zack Riley sustained damages in excess of $ 75,000, including from the loss of Rosemary's companionship, comfort, instruction, guidance and counsel, under § 537.080 of the Revised Statutes of Missouri, as a result of Rosemary's death.

77.     Defendants showed complete indifference and conscious disregard for the safety of others, justifying the imposition of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants Hannibal Hospital, Hannibal Clinic, Blessing, and John Does 1 through 60 for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief as this Court deems just and proper.

## COUNT II

### WRONGFUL DEATH – RES IPSA LOQUITUR

### (Hannibal Hospital, Hannibal Clinic, Blessing, John Does 1 through 60)

78.     Plaintiff incorporates Paragraphs 1 through 70 as if fully set out herein.

79.     For purposes of this Count, "Defendants" refers jointly and severally to Hannibal Hospital, Hannibal Clinic, Blessing, and John Does 1 through 60.

80.     Defendants had a duty to possess and use that degree of skill and learning ordinarily used under similar circumstances by members of their profession in the care and treatment of Rosemary.

81.     Defendants breached their duty of care by recklessly, carelessly, and negligently

11

allowing surgical sponges to remain inside Rosemary's abdomen, and by failing to detect or address the presence of the sponges they left inside Rosemary

82.     The injury sustained by Rosemary and the incident or incidents giving rise to the injury are of a kind that ordinarily does not occur without someone's negligence.

83.     The injury sustained by Rosemary and the incident or incidents giving rise to the injury were caused by an instrumentality under the control of Defendants.

84.     Defendants have superior knowledge of the cause of the injury sustained by Rosemary and the incident or incidents giving rise to her injury.

85.     As a direct and proximate result of Defendants' reckless, careless and negligent acts, Rosemary sustained death and other damages in excess of $ 75,000 under § 537.080 of the Revised Statutes of Missouri.

86.     As a direct and proximate result of Defendants' reckless, careless and negligent acts, Plaintiff Zack Riley sustained damages in excess of $ 75,000, including from the loss of Rosemary's companionship, comfort, instruction, guidance and counsel, under § 537.080 of the Revised Statutes of Missouri, including due to Rosemary's death.

87.     Defendants showed complete indifference and conscious disregard for the safety of others, justifying the imposition of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief as this Court deems just and proper.

## COUNT III

### WRONGFUL DEATH – PUNITIVE DAMAGES

### (Hannibal Hospital, Hannibal Clinic, Blessing, John Does 1 through 60)

88.     Plaintiff incorporates paragraphs 1 through 87 as if fully set out herein.

89.     For purposes of this Count, "Defendants" refers jointly and severally to Hannibal Hospital, Hannibal Clinic, Blessing, and John Does 1 through 60.

90.     Defendants committed one or more willful, wanton, and malicious acts as more fully set forth above, which individually or cumulatively justify the submission of punitive damages in this case.

91.     Defendants knew or had information from which they should have known, in the exercise of ordinary care, that their conduct created a high degree of probability of injury or death of Rosemary and other similarly situated patients.

92.     Defendants' willful, wanton, and malicious acts evidence a complete indifference and conscious disregard for the safety of Rosemary and others similarly situated, justifying the submission of punitive damages in this case.

WHEREFORE, Plaintiff prays for judgment against Defendants for such sums are as fair and reasonable, including punitive damages to punish and deter those defendants, and others similarly situated, from engaging in like conduct, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## COUNT IV

### WRONGFUL DEATH – MEDICAL NEGLIGENCE

### (Landmark, Landmark Management, and John Does 61-80)

93.     Plaintiff incorporate Paragraphs 1 through 70 as if fully set out herein.

13

94.     For purposes of this Count, "Defendants" refers jointly and severally to Landmark, Landmark Management, and John Does 61-80.

95.     When Rosemary sought treatment at Landmark, her life could have been saved if her symptoms and condition had been properly diagnosed and had appropriate medical intervention been made.

96.     Had Defendants properly diagnosed and treated Rosemary, she would not have needed to seek treatment at another facility.

97.     John Does 61-80 were acting as agents of Landmark and Landmark Management when they negligently treated Rosemary, proximately causing her death.

98.     Landmark was acting as agent of Landmark Management when Landmark negligently failed to properly diagnose and treat Rosemary, causing or contributing to her death.

99.     As a direct and proximate result of Defendants' reckless, careless and negligent acts, Plaintiff Zack Riley sustained damages in excess of $ 75,000, including from the loss of Rosemary's companionship, comfort, instruction, guidance and counsel, under § 537.080 of the Revised Statutes of Missouri, as a result of Rosemary's death.

WHEREFORE, Plaintiff pray for judgment against Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief as this Court deems just and proper.

## COUNT V

### WRONGFUL DEATH – LOST CHANCE OF RECOVERY OR SURVIVAL

### (Landmark, Landmark Management, John Does 61-80)

100.    Plaintiff incorporate Paragraphs 1 through 70 as if fully set out herein.

101.    For purposes of this Count, "Defendants" refers jointly and severally to Landmark,

Landmark Management, and John Does 61-80.

102.    When Rosemary sought treatment at Landmark, her life could have been saved and prolonged if her symptoms and condition had been properly diagnosed and had appropriate medical intervention been made.

103.    Had Defendants met their duty of care in treating Rosemary, she would not have needed to seek treatment at another facility.

104.    As a direct and proximate result of Defendants' reckless, careless and negligent care of Rosemary, Rosemary lost a substantial chance of recovery, and as such, is entitled to damages in excess of $75,000 for said loss under § 537.021 of the Revised Statutes of Missouri.

105.    John Does 61-80 were acting as agents of Landmark and Landmark Management when they negligently failed to properly diagnose and treat Rosemary, causing loss of chance of recovery and survival.

106.    Landmark was acting as agent of Landmark Management and Landmark Holdings of Missouri, LLC, when Landmark negligently failed to properly diagnose and treat Rosemary, causing loss of chanced of recovery and survival.'

107.    Rosemary's cause of action for lost chance of recovery and survival survives her death and belongs to her estate.

WHEREFORE, Plaintiff pray for judgment against Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief as this Court deems just and proper.

## COUNT VI

## WRONGFUL DEATH – PUNITIVE DAMAGES

### (Landmark, Landmark Management, John Does 61-80)

108.    Plaintiff incorporates paragraphs 1 through 70 and paragraphs 93 through 107 as if fully set out herein.

109.    For purposes of this Count, "Defendants" refers jointly and severally to Landmark, Landmark Management, and John Does 61-80.

110.    Defendants committed one or more willful, wanton, and malicious acts as more fully set forth above, which individually or cumulatively justify that submission of punitive damages in this case.

111.    Defendants knew or had information from which they should have known, in the exercise of ordinary care, that their conduct created a high degree of probability of injury or death of Rosemary and other similarly situated patients.

112.    Defendants' willful, wanton, and malicious acts evidence a complete indifference and conscious disregard for the safety of Rosemary and others similarly situated, justifying the submission of punitive damages in this case.

WHEREFORE, Plaintiff prays for judgment against Defendants for such sums are as fair and reasonable, including punitive damages to punish and deter those defendants, and others similarly situated, from engaging in like conduct, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## COUNT VII

### WRONGFUL DEATH – MEDICAL NEGLIGENCE

### (MU Hospital, Curators, John Does 81-100)

113.    Plaintiff incorporate Paragraphs 1 through 70 as if fully set out herein.

114.    For purposes of this Count, "Defendants" refers jointly and severally to MU Hospital, Curators, and John Does 81-100.

115.    When Rosemary sought treatment at MU Hospital, her life could have been saved and prolonged if her symptoms and condition had been properly diagnosed and had appropriate medical intervention been made.

116.    Had Defendants properly diagnosed and treated Rosemary, she would not have needed to seek treatment at another facility.

117.    Defendants' negligent failure to properly diagnose and treat Rosemary caused or contributed to her death by permitting the infection to worsen and cause internal damage that brought about her death.

118.    John Does 81-100 were acting as agents of MU Hospital and Curators when they negligently failed to properly diagnose and treat Rosemary, causing or contributing to her death.

119.    MU Hospital was acting as agent of Curators when MU Hospital negligently failed to properly diagnose and treat Rosemary, causing or contributing to her death.

120.    As a direct and proximate result of Defendants' reckless, careless and negligent acts, Plaintiff Zack Riley sustained damages in excess of $ 75,000, including from the loss of Rosemary's companionship, comfort, instruction, guidance and counsel, under § 537.080 of the Revised Statutes of Missouri, as a result of Rosemary's death.

WHEREFORE, Plaintiff pray for judgment against Defendants for such sums as are fair

and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief as this Court deems just and proper.

## COUNT VIII

### WRONGFUL DEATH – LOST CHANCE OF RECOVERY OR SURVIVAL

### (MU Hospital, Curators, John Does 81-100)

121.    Plaintiff incorporate Paragraphs 1 through 70 as if fully set out herein.

122.    For purposes of this Count, "Defendants" refers jointly and severally to MU Hospital, Curators, and John Does 81-100.

123.    When Rosemary sought treatment at MU Hospital, her life could have been saved and prolonged if her symptoms and condition had been properly diagnosed and had appropriate medical intervention been made.

124.    Had Defendants met their duty of care in treating Rosemary, she would not have needed to seek treatment at another facility.

125.    As a direct and proximate result of Defendants' reckless, careless and negligent care of Rosemary, Rosemary lost a substantial chance of recovery, and as such, is entitled to damages in excess of $75,000 for said loss under § 537.021 of the Revised Statutes of Missouri.

126.    John Does 81-100 were acting as agents of MU Hospital and Curators when they negligently failed to properly diagnose and treat Rosemary, causing loss of chance of recovery and survival.

127.    MU Hospital was acting as agent of Curators when MU Hospital negligently failed to properly diagnose and treat Rosemary, causing loss of chanced of recovery and survival.'

128.    Rosemary's cause of action for lost chance of recovery and survival survives her death and belongs to her estate.

WHEREFORE, Plaintiff pray for judgment against Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief as this Court deems just and proper.

## COUNT IX

## WRONGFUL DEATH – PUNITIVE DAMAGES

### (MU Hospital, Curators, John Does 81-100)

129.    Plaintiff incorporates paragraphs 1 through 70 and paragraphs 113 through 128 as if fully set out herein.

130.    For purposes of this Count, "Defendants" refers jointly and severally to MU Hospital, Curators, and John Does 81-100.

131.    Defendants committed one or more willful, wanton, and malicious acts as more fully set forth above, which individually or cumulatively justify that submission of punitive damages in this case.

132.    Defendants knew or had information from which they should have known, in the exercise of ordinary care, that their conduct created a high degree of probability of injury or death of Rosemary and other similarly situated patients.

133.    Defendants' willful, wanton, and malicious acts evidence a complete indifference and conscious disregard for the safety of Rosemary and others similarly situated, justifying the submission of punitive damages in this case.

WHEREFORE, Plaintiff prays for judgment against Defendants for such sums are as fair and reasonable, including punitive damages to punish and deter those defendants, and others similarly situated, from engaging in like conduct, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

Case 2:15-cv-04294-MDH   Document 1   Filed 12/19/15   Page 19 of 23

## COUNT X

## WRONGFUL DEATH – MEDICAL NEGLIGENCE

## (Barnes, BJC, John Does 101-120)

134.    Plaintiff incorporate Paragraphs 1 through 70 as if fully set out herein.

135.    For purposes of this Count, "Defendants" refers jointly and severally to Barnes, BJC, and John Does 101-120.

136.    When Rosemary sought treatment at Barnes, her life could have been saved and prolonged if her symptoms and condition had been properly diagnosed and had appropriate medical intervention been made.

137.    Had Defendants properly diagnosed and treated Rosemary, she would not have needed to seek treatment at another facility.

138.    Defendants' negligent failure to properly diagnose and treat Rosemary caused or contributed to her death by permitting the infection to worsen and cause internal damage that brought about her death.

139.    John Does 101-120 were acting as agents of Barnes and BJC when they negligently failed to properly diagnose and treat Rosemary, causing or contributing to her death.

140.    Barnes was acting as agent of BJC when Barnes negligently failed to properly diagnose and treat Rosemary, causing or contributing to her death.

141.    As a direct and proximate result of Defendants' reckless, careless and negligent acts, Plaintiff Zack Riley sustained damages in excess of $ 75,000, including from the loss of Rosemary's companionship, comfort, instruction, guidance and counsel, under § 537.080 of the Revised Statutes of Missouri, as a result of Rosemary's death.

WHEREFORE, Plaintiff pray for judgment against Defendants for such sums as are fair

and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief as this Court deems just and proper.

## COUNT XI

### WRONGFUL DEATH – LOST CHANCE OF RECOVERY OR SURVIVAL

### (Barnes, BJC, John Does 101-120)

142.    Plaintiff incorporate Paragraphs 1 through 70 as if fully set out herein.

143.    For purposes of this Count, "Defendants" refers jointly and severally to Barnes, BJC, and John Does 101-120.

144.    When Rosemary sought treatment at Barnes, her life could have been saved and prolonged if her symptoms and condition had been properly diagnosed and had appropriate medical intervention been made.

145.    Had Defendants met their duty of care in treating Rosemary, she would not have needed to seek treatment at another facility.

146.    As a direct and proximate result of Defendants' reckless, careless and negligent care of Rosemary, Rosemary lost a substantial chance of recovery, and as such, is entitled to damages in excess of $75,000 for said loss under § 537.021 of the Revised Statutes of Missouri.

147.    John Does 101-120 were acting as agents of Barnes and BJC when they negligently failed to properly diagnose and treat Rosemary, causing loss of chance of recovery and survival.

148.    Barnes was acting as agent of BJC when Barnes negligently failed to properly diagnose and treat Rosemary, causing loss of chanced of recovery and survival.'

149.    Rosemary's cause of action for lost chance of recovery and survival survives her death and belongs to her estate.

WHEREFORE, Plaintiff pray for judgment against Defendants for such sums as are fair

and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief as this Court deems just and proper.

## COUNT XII

### WRONGFUL DEATH – PUNITIVE DAMAGES

### (Barnes, BJC, John Does 101-120)

150.     Plaintiff incorporates paragraphs 1 through 70 and paragraphs 134 through 149 as if fully set out herein.

151.     For purposes of this Count, "Defendants" refers jointly and severally to Barnes, BJC, and John Does 101-120.

152.     Defendants committed one or more willful, wanton, and malicious acts as more fully set forth above, which individually or cumulatively justify that submission of punitive damages in this case.

153.     Defendants knew or had information from which they should have known, in the exercise of ordinary care, that their conduct created a high degree of probability of injury or death of Rosemary and other similarly situated patients.

154.     Defendants' willful, wanton, and malicious acts evidence a complete indifference and conscious disregard for the safety of Rosemary and others similarly situated, justifying the submission of punitive damages in this case.

WHEREFORE, Plaintiff prays for judgment against Defendants for such sums are as fair and reasonable, including punitive damages to punish and deter those defendants, and others similarly situated, from engaging in like conduct, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

JURY TRIAL DEMANDED.

Respectfully Submitted,

JOHNSTON & SMITH, LLC

/s/ George S. Smith
George S. Smith, # 53019
2800 Forum Blvd., Ste. 3
Columbia, MO 65203
(573) 499-1616
(573) 449-3004 (fax)
*Attorneys for Plaintiff*